102 B.R. 738 (1989)
BANKWEST, INC., Appellant,
v.
UNITED STATES of America, By and Through the FARMERS HOME ADMINISTRATION, Appellee.
Civ. No. 89-3015.
United States District Court, D. South Dakota, C.D.
July 13, 1989.
*739 Brent A. Wilbur, Michael F. Shaw, May, Adam, Gerdes & Thompson, Thomas A. Lloyd, Asst. U.S. Atty., Pierre, S.D., for appellee.
Robert M. Nash, Rapid City, S.D., for Katcon, Inc.

MEMORANDUM OPINION
DONALD J. PORTER, Chief Judge.
Appellant BankWest, Inc. (BankWest) appeals a judgment determining relative priorities of interests in real estate entered on February 10, 1989 by the Honorable Irvin N. Hoyt, Chief Bankruptcy Judge for the District of South Dakota. BankWest contends that the bankruptcy court erred by concluding that appellee United States of America, through its agency the Farmers Home Administration (FmHA), had an interest superior to that of BankWest in Stanley County realty held by debtor Katcon, Inc. FmHA cross-appeals the bankruptcy court's refusal to apply the doctrine of equitable subordination. Finding no error in the bankruptcy court judgment, this Court affirms the February 10, 1989 order.

I. FACTS.
This appeal arises from a Chapter 11 reorganization case filed by debtor Katcon, Inc. (Katcon), a South Dakota family farm corporation run by members of the Smith family. In March of 1972, the Smiths purchased a tract of land in Stanley County from George and Patty Fluharty through a contract for deed. Following the creation of the family farm corporation called Katcon, the Smiths assigned the contract for deed to Katcon in March of 1974. Katcon in turn assigned its interest in the contract to Pierre National Bank, the predecessor of BankWest, as security for loans made by the bank. This assignment, which took place on April 4, 1975, was recorded on June 30, 1976 with the Stanley County Register of Deeds.
During the drought of 1976 and 1977, Katcon became desperate for additional financing. The Pierre National Bank, predecessor of BankWest, already had loaned substantial monies to Katcon and wanted Katcon to find financing elsewhere. After being denied financing by a Chamberlain bank, Katcon upon the suggestion of BankWest arranged financing from FmHA.
To facilitate the making of the FmHA loan, BankWest in a document dated March 23, 1977 released the prior assignment of the contract for deed from Katcon. On March 25, 1977, Katcon executed a mortgage to secure the FmHA indebtedness and a reassignment of the contract for deed to BankWest to provide continuing security to BankWest. Attorney Charles P. Schroyer handled the transaction as an agent for all the parties. FmHA wanted a first priority and instructed attorney Schroyer to execute the documents in such an order as to give FmHA an interest subordinate only to the vendor's rights under the contract for deed. At the March 25, 1977 closing, Schroyer carefully arranged the documents and instructed the Smiths on the order of signing documents. However, no one recalls the precise order of signing the documents. Schroyer testified that he followed normal practice, which would include instructing the register of deeds to record the documents in a particular order rather than simultaneously. Upon receipt of the documents, the register of deeds numbered the documents in the fee book as follows: 1) 14252  the BankWest release to Katcon of BankWest's interest in the contract for deed; 2) 14253  the FmHA mortgage; and 3) 14254  the reassignment of Katcon's interest in the contract for deed to BankWest. The Stanley County Register of Deeds commonly used the fee book to record the order in which the documents were to be filed and understood that the order of recordation reflected relative priority. Nevertheless, the register of deeds stamped the release of assignment, FmHA mortgage, and the reassignment to BankWest with *740 the identical stamp bearing the date March 25, 1977 and the time 11:42 a.m.
After March 25, 1977, FmHA advanced additional funds to Katcon while BankWest was receiving some payments from Katcon on the money Katcon owed. On May 19, 1988, FmHA commenced an adversary proceeding before the bankruptcy court pursuant to 28 U.S.C. 157(c), and 11 U.S.C. §§ 105, 510 to determine the relative priority of the interests of FmHA and BankWest and to resolve allegations of breach of contract, wrongful retention of funds, and negligent mismanagement of funds. FmHA also sought to have the bankruptcy court subordinate BankWest's interests to the entirety of the indebtedness owed to FmHA. BankWest does not contest the validity of the fmHA mortgage on appeal, but argues that BankWest and FmHA had an equal priority since the documents evidencing the March 1977 indebtedness were stamped as simultaneously recorded. The bankruptcy court tried these issues on December 8 and 9, 1988 and issued written findings of fact and conclusions of law on February 10, 1989. The court concluded that the portion of the FmHA interest secured by the March 25, 1977 mortgage had priority over BankWest's interest. This appeal from the bankruptcy court decision presents two issues: 1) the relative priorities of the interests of FmHA and BankWest; and 2) the applicability of the doctrine of equitable subordination in this case.

II. ANALYSIS OF LAW.
This Court has jurisdiction over appeals from bankruptcy court judgments pursuant to 28 U.S.C. § 158(a) and bankruptcy rule 8001(a). The standard of review of bankruptcy court rulings is clear error for factual findings and de novo for conclusions of law. Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir.1987). Issues of fact and conclusions of law are intertwined in the bankruptcy court's decision that FmHA enjoys a priority over the BankWest loan and that equitable subordination is inappropriate in this case.

A. Relative Priority of Liens.
South Dakota law governs the relative priorities of interests in real property within the State of South Dakota. Under SDCL § 43-28-17, relative priority depends upon the time of recordation. An instrument is deemed to be recorded when it is deposited in the register of deed's office. SDCL § 43-28-11. There is no South Dakota case law and very scant authority generally as to priority given real estate documents that appear to be recorded simultaneously. Several treatise writers have concluded that when conflicting instruments affecting the same property are simultaneously recorded, the instruments are of equal priority, unless a statute provides some sort of "tie-breaker" or the parties intended or agreed that one instrument would take priority over the other. 8A G. Thompson, Real Property § 4345, p. 33-34 (1963 Replacement); IV A. Kasner, American Law of Property, § 1732 (1952); 5 H Tiffany, The Law of Real Property, § 1460 (1939); III G. Glenn, Mortgages, § 373 (1943); 59 C.J.S. Mortgages, § 247 (1949); R. Patten, Land Titles, § 12 (2d ed. 1957); Fender v. Appel, 187 Minn. 281, 245 N.W. 148 (1932). There is no statutory tie-breaker in the South Dakota Code.
The bankruptcy court found that the parties intended and impliedly agreed that the interest of FmHA would have priority over BankWest's interest. BankWest contends that the bankruptcy court made an error of law in this conclusion because when there are different notes secured by different mortgages, only an explicit agreement alters the general rule of equal priority for simultaneous filings. BankWest concedes that when notes are secured by the same mortgage, implied agreements are sufficient to defeat the presumption of equal priority for simultaneously recorded documents. BankWest derives this legal distinction from suggestions in authority such as Cain v. Hanna, 63 Ind. 408 (1878); Bonstein v. Schweyer, 212 Pa. 19, 61 A. 447 (1905); Annotation, 50 A.L.R. 543, 544; and 55 Am.Jur.2d, Mortgages §§ 339, 341, 344, 347 (1971 & Supp.1989). These authorities provide very tenuous support for BankWest's contentions.
*741 The evidence as a whole supports the conclusion that the parties intended FmHA to obtain an interest superior to that of BankWest. This Court finds that there was no clear error in the bankruptcy court's factual conclusions that BankWest was told of FmHA's desire to obtain a first priority; that BankWest wanted to help Katcon obtain an FmHA loan and executed a complete release of its interest in the contract for deed to allow FmHA to take a senior interest; that the attorney handling the transaction was instructed and sought to ensure FmHA a lien superior to that of BankWest; that the Register of Deeds obtained the documents with instructions to record them in a particular order; and that the order of recordation is reflected in the numbers assigned the documents in the fee book. There is ample evidence in the record to support the bankruptcy court's conclusion that the parties intended BankWest to have a subordinate position to the FmHA mortgage.

B. Equitable Subordination
FmHA contends that the bankruptcy court erred in not subordinating BankWest's interest to the entirety of FmHA's claims. Application of the doctrine of equitable subordination, recognized in 11 U.S.C. § 510(c), is committed to the discretion of the court. The generally accepted test for equitable subordination requires the following: (1) the claimant engaged in some type of inequitable conduct; (2) the misconduct resulted in injury to creditors or conferred an unfair advantage upon the claimant; and (3) equitable subordination is not inconsistent with provisions of the Bankruptcy Act. In re Mobile Steel, 563 F.2d 692, 700 (5th Cir.1977). Equitable subordination is usually reserved for instances where there is fraud or insiders acting in such a manner as to undermine other creditors' rights. See, e.g., In re Sepco, 750 F.2d 51 (8th Cir.1984); In re Bellanca Aircraft Corp., 56 B.R. 339, 400-02 (Bankr.D.Minn.1985), aff'd in part and remanded, 850 F.2d 1275 (8th Cir.1988). Having reviewed the case as a whole, this Court concludes that the bankruptcy court did not err in refusing to apply the doctrine of equitable subordination. Therefore, the bankruptcy court order of February 10, 1989 is affirmed in its entirety.