### In re ODOM ANTENNAS, INC., Debtor.

**M. Randy Rice, Trustee, Plaintiff,**

**v.**

**United States of America d/b/a Internal Revenue Service; Lori Holloway and James Holloway; State of Arkansas c/o Employment Security Division; Candy Stevens; Tammy Gattis; Richard Hatfield P.A.; Timothy O. Bunch a/k/a Tim Bunch; and The Law Office of Brad Hendricks, Defendants.**

**Bankruptcy No. 97–45729.
Adversary No. 99–4194.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Jan. 25, 2001.

Judy Simmons Henry, Wright, Lindsey & Jennings, Little Rock, AR, Basil V. Hicks, Jr., Hankins, Capps, Hicks & Madden, N. Little Rock, AR, Gwendolyn Hodge, U.S. Attorney's Office, Little Rock, AR, A.J. Kelly, Kelly Law Firm, Little Rock, AR, Steven A. Owings, Attorney at Law, Little Rock, AR, Andrew T. Pribe, U.S. Dept. of Justice, Tax Division, Washington, DC, Joel L. Taylor, Attorney at Law, Morrilton, AR, for creditor.

William W. Thornton, Beebe, AR, pro se.

Geoffrey B. Treece, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, AR, for debtor.

## PARTIAL ORDER DENYING HOLLOWAYS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court are the trustee's "Complaint to Determine the Nature, Validity, Extent and Priority of Liens" against the debtor, Odom Antennas, Inc., which was filed on December 21, 1999, relating to the sale of real property owned by the debtor; creditors Lori and James Holloways' cross-claims against the United States, Candy Stevens, Tammy Gattis, the Law Office of Brad Hendricks, and Richard Hatfield P.A., which were all filed on September 7, 2000; creditors' "Lori Holloway's and James Holloway's Motion For Partial Summary Judgment Against Trustee, United States Internal Revenue Service, and Candy Stevens Concerning Objections to Claims, Affirmative Defenses and Cross Claims Requesting Court to Determine Priority of Claims of U.S. I.R.S. and Stevens; and Alternative Motion For Leave to Proceed" [Motion For Partial Summary Judgment], which was filed on September 22, 2000; and creditors' "Lori Holloway's and James Holloway's Amended and Supplemental Motion For Partial Summary Judgment Against Trustee, United States Internal Revenue Service, and Candy Stevens Concerning Objections to Claims, Affirmative Defenses and Cross Claims Requesting Court to Determine Priority of Claims of U.S. I.R.S. and Stevens; and Alternative Motion For Leave to Proceed, Made at the Direction of the Court; With Memorandum Brief in Support" [Amended Motion For Partial Summary Judgment], which was filed on December 15, 2000.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The following findings are in accordance with Federal Rule of Bankruptcy Procedure 7052.

## HISTORY

The debtor, Odom Antennas, Inc., was placed in an involuntary chapter 7 bankruptcy proceeding on June 1, 1998. On March 23, 1999, the Court entered its order granting the trustee, M. Randy Rice's, motion to sell certain real property that belonged to the debtor. On April 16, 1999, the trustee sold the real property to Warehouse Opportunities, Inc. for the sum of $275,000.00. The following costs were paid from the proceeds of the sale: (1) closing costs in the amount of $2146.75, (2) property taxes paid at closing in the amount of $18,788.72, (3) trustee's commission and expenses associated with the preservation and liquidation of the property in the amount of $17,230.57, and (4) distribution to Small Business Administration to satisfy its secured claim on the real property in the amount of $83,851.54.

On December 21, 1999, the trustee filed his "Complaint to Determine the Nature, Validity, Extent, and Priority of Liens," pursuant to Federal Rule of Bankruptcy

Procedure 7001(2).[1] In the complaint, the trustee states that he has in his account the remaining proceeds from the sale of the real property, $152,982.42, and requests the Court order all remaining proceeds be paid to secured creditors in accordance with the priority and extent of their liens, after withholding an amount sufficient to satisfy the trustee's claims for commission and administrative expenses. The trustee further requests the Court to determine the nature, priority, validity, and extent of each lien. The trustee named the following parties as having a potential claim to the proceeds:

- Lori and James Holloway, as the result of a judgment against the debtor that was obtained on May 17, 1996, and filed with the Circuit Court of White County, Arkansas, on May 20, 1996, and a judgment for attorney fees and costs that was subsequently obtained;

- State of Arkansas, Employment Security Division, as the result of Certificates of Assessment that were filed with the Circuit Clerk of White County, Arkansas, on July 7, 1996, and November 8, 1996;

- United States of America, Internal Revenue Service, as the result of a Notice of Tax Lien that was filed with the Circuit Clerk of White County, Arkansas, on November 23, 1996;

- Candy Stevens, as the result of a judgment against the debtor that was entered on December 17, 1996, and allegedly attached to the real property on the same date;

- Tammy Gattis, as the result of a mortgage dated December 19, 1996, and filed with the Circuit Clerk of White County, Arkansas, on January 21, 1997;

- The Law Office of Brad Hendricks, as the result of a mortgage dated December 19, 1996, and filed with the Circuit Clerk of White County, Arkansas, on January 21, 1997;

- Richard Hatfield P.A., as the result of a mortgage dated December 19, 1996, and filed with the Circuit Clerk of White County, Arkansas, on January 30, 1997; and

- Timothy A. Bunch a/k/a Tim Bunch, as the result of a mortgage dated June 25, 1997, and filed with the Circuit Clerk of White County, Arkansas, on July 2, 1997.

On January 13, 2000, the Court entered its order granting Lori and James Holloways' motion for additional time within which to answer the trustee's complaint. All other parties timely answered the trustee's complaint. On January 31, 2000, the Holloways filed an answer and counterclaim. In their answer, the Holloways asserted affirmative defenses against the claims of Gattis, Law Office of Brad Hendricks, Richard Hatfield P.A., and Bunch, alleging that the transfers to these parties were voidable preferences. In their counterclaim against the trustee, they asked the Court to declare that the trustee has the legal responsibility to request the Internal Revenue Service make a determination of the debtor's tax liability under 11 U.S.C. § 505.[2]

On April 13, 2000, Timothy O. Bunch filed a motion to dismiss, in which he waived any claim he had to the funds held by the trustee in exchange for the trustee's dismissal of Bunch from the lawsuit. On April 18, 2000, the Court entered its order granting defendant Timothy O. Bunch's motion to dismiss. On July 28, 2000, the Court entered its order of recusal regarding Judge James G. Mixon, and assigned the case to Judge Robert F. Fussell.

---

1. Fed.R.Bankr.P. 7001(2) states:

 An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:
 (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);

2. This counterclaim was later withdrawn by Holloways' attorney, A.J. Kelly, at the hearing on the trustee's complaint, which was held on September 8, 2000.

On September 7, 2000, the day before the hearing on the trustee's complaint, Lori and James Holloway filed separate crossclaims against the United States of America, Candy Stevens, Tammy Gattis, the Law Office of Brad Hendricks, and Richard Hatfield P.A. The Holloways stated in each crossclaim that they filed the crossclaims in "an excess of caution" after objecting to each respective claim in their answer to the trustee's complaint.

On September 8, 2000, the Court held a hearing on the trustee's complaint to determine the nature, validity, extent, and priority of the liens filed against the debtor, Odom Antennas, Inc. Present at the hearing were the trustee, M. Randy Rice; Andrew Pribe, representing the United States; A.J. Kelly, representing the Holloways; Audrey R. Evans, representing Candy Stevens; Richard F. Hatfield, representing Richard Hatfield P.A.; and Steven A. Owings, representing Tammy Gattis and the Law Office of Brad Hendricks. After the Court excused the parties to discuss among themselves a stipulation of facts to present to the Court, Richard Hatfield and Steven A. Owings left the courthouse prior to the Court receiving the joint stipulation of facts.

The remaining parties read a joint stipulation of facts into the record identifying three legal issues to be determined by the Court, and setting forth the specific dates on which various property interests in the debtor's estate arose. The first part of the stipulation concerned the dates that various interests in the debtor's property originated. Those dates are as follows:

| | Lien holder | Type of interest | Date lien arose |
|---|---|---|---|
| 1 | Lori and James Holloway | Judgment | May 20, 1996 |
| 2 | State of Arkansas Employment Security Division | Lien | July 10, 1996 |
| 3 | State of Arkansas Employment Security Division | Lien | November 8, 1996 |
| 4 | Candy Stevens | Order captioned "Findings of Fact and Law" (includes punitive damages) | December 17, 1996 |
| 5 | United States | Federal tax lien (includes pre-petition penalties) | December 23, 1996 |
| 6 | Candy Stevens | Amended Order | January 16, 1997 |
| 7 | Tammy Gattis | Mortgage | January 21, 1997 |
| 8 | The Law Office of Brad Hendricks | Mortgage | January 21, 1997 |
| 9 | Richard Hatfield P.A. | Mortgage | January 30, 1997 |
| 10 | Candy Stevens | Order Liquidating Attorney Fees | March 4, 1997 |
| 11 | State of Arkansas Department of Finance and Administration | Lien | September 2, 1997 |
| 12 | Lori and James Holloway | Order Liquidating Attorney Fees | November 25, 1997 |

The parties also agreed that a distribution could be made with regard to certain claims that were not in dispute. Specifically, the parties agreed that the Holloways' claim in the approximate amount of $2600.00–3000.00 (claim 1, above), the two Arkansas Employment Security Division claims in the combined amount of approximately $3500.00 (claims 2 and 3, above), and the portion of Candy Stevens's claim that does not pertain to punitive damages, in the approximate amount of $36,000.00 (claim 4, above), should be paid. The parties also agreed that the trustee commission applicable to that distribution should also be paid.

Finally, the parties stipulated to three legal issues before the Court, the determination of which would allow the trustee to liquidate the amounts to be distributed to the respective parties. First, may a secured creditor with an interest in property arising from a judgment lien relate back a subsequent judgment lien for attorney fees to the date of the prior judgment lien such that the subsequent lien would defeat liens perfected in the period between the perfection of the prior judgment lien and the subsequent judgment lien for attorney fees. Second, may a secured creditor subordinate pre-petition, noncompensatory tax penalties under either 11 U.S.C. §§ 502(d), 510, 724(a), or 726. Third, may a secured creditor subordinate a prior secured creditor's claim for punitive damages under either 11 U.S.C. §§ 502(d), 510, 724(a), or 726 when that prior secured creditor has a perfected judgment lien.

The Court took the matter under advisement to determine the three legal issues that were read into the record. At that time, the Court stated that it would hold in abeyance all matters pending before the Court until its determination of the three legal issues. The parties were asked to brief the issues and the Court issued a briefing schedule.

On September 22, 2000, in response to the Court's briefing schedule, the Holloways filed their brief of the issues presented at the hearing in their Motion For Partial Summary Judgment. In the motion, the Holloways asked the Court to rule in their favor regarding the affirmative defenses they presented concerning Stevens's claim for punitive damages, and the United States's claim for pre-petition, noncompensatory tax penalties. In the alternative, they requested leave to proceed on their own behalf against Stevens and the United States because the trustee has refused to take action. Finally, they requested the Court to set a trial to determine the damages, payment, priority, interest rates, and calculation of amounts to be paid to Holloways. The United States

and Candy Stevens filed their separate briefs and responses on October 6, 2000.

On October 11, 2000, the Court entered its order approving the trustee's partial distribution of sale proceeds pursuant to the joint stipulation of the parties on September 8, 2000. On December 15, 2000, the Holloways filed their Amended Motion For Partial Summary Judgment. In the amended motion, the Holloways asserted standing to proceed against the trustee, Stevens, and the United States regarding Stevens's claim for payment of punitive damages and the United States's claim for pre-petition tax penalties. The Holloways also argued that if the United States's and Stevens's claims were not subordinated to the claims of other secured creditors, the entire claims of the United States and Stevens should be disallowed pursuant to 11 U.S.C. § 502(d).

## CONCLUSIONS OF LAW

### ISSUE ONE—ELEVATION OF SUBSEQUENT JUDGMENT

The first issue the Court asked the parties to brief was whether the Holloways could relate back their "Order Liquidating Attorney's Fees" that was filed on November 25, 1997, to the date of their earlier judgment lien that was obtained on May 20, 1996. The Holloways had contended that if they could relate back their "Order Liquidating Attorney's Fees" to their earlier judgment, the resulting lien would defeat the liens perfected in the period between the perfection of the earlier judgment lien and the subsequent order liquidating the attorney fees. The Holloways later waived their argument concerning "relation back" as to the United States and Stevens in their Reply Memorandum in support of their Motion For Partial Summary Judgment. In a letter addressed to counsel for the United States and Candy Stevens, dated October 5, 2000, and attached as an unmarked exhibit to Holloways' Reply Memorandum, Holloways' attorney stated that "[a]s to

the IRS and Candy Stevens, Lori Holloway and James Holloway agree to waive their argument that their Amendment to Judgment (November 1997) relates back to the date of their original Judgment (May 1996). The Holloways do not waive the argument as to any other Defendant."

Even though the Holloways did not waive the argument as to any other defendant, they failed to address this issue in either their Motion For Partial Summary Judgment or Amended Motion For Partial Summary Judgment. There is no legal authority cited by the Holloways, nor is there any legal authority or basis for support of the Holloway's argument or theory of "relation back," to allow the Holloways to bootstrap their attorney fee judgment into a position of priority over the other creditors. Accordingly, the Court finds that the assertion by the Holloways that their "Order Liquidating Attorney's Fees" can relate back to their judgment lien is relinquished. Further, there is no legal authority cited by the Holloways, nor is there any legal authority or basis for support of the Holloway's argument.

## ISSUES TWO AND THREE— SUBORDINATION OF CERTAIN CLAIMS

Lori and James Holloway contend that the trustee must subordinate the United States's claim for pre-petition, noncompensatory tax penalties and Candy Stevens's claim relating to punitive damages to the payment of the Holloway's entire secured claim (apparently, without regard to the five claims ahead of the Holloways' claim for attorney fees). The code provisions upon which the Holloways base their argument are 11 U.S.C. §§ 502(d),[3] 724(a),[4] 726(a)(4),[5] and 510(c).[6] A discussion of these code sections also requires review of §§ 551[7] and 725.[8]

### SECTION 502(d)

■ The Holloways assert that § 502(d) allows them to ask the Court to sustain their objections to the entire claims of the United States and Stevens because the trustee "could have but failed to remove

---

**3.** 11 U.S.C. § 502(d) states:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

**4.** 11 U.S.C. § 724(a) states:

The trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title.

**5.** 11 U.S.C. § 726(a)(4) states:

Except as provided in section 510 of this title, property of the estate shall be distributed—
(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are

not compensation for actual pecuniary loss suffered by the holder of such claim;

**6.** 11 U.S.C. § 510(c) states:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing the court may—
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest;

**7.** 11 U.S.C. § 551 states:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

**8.** 11 U.S.C. § 725 states:

After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

the respective liens of IRS and Stevens for noncompensatory pre-petition tax penalties and punitive damages pursuant to the Trustee's power under § 724(a) and § 726(a)(4)." Section 502(d) requires "disallowance of a claim of a transferee of a voidable transfer in toto if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises." 4 Collier on Bankruptcy ¶ 502.05.[1], at 502–54 (15th ed. rev.)(2000). Assuming that the United States and Stevens are transferees of a transfer avoidable under the sections cited in § 502(d), the turnover of the property received would be compelled by § 724(a).[9] In other words, if the trustee were able to avoid the liens that secured the United States's claim for pre-petition tax penalties and Stevens's claim for punitive damages, and the United States and Stevens did not abandon, or agree to subordinate, that portion of their respective claims, the entire claims of the United States and Stevens would be disallowed.

■ For the Holloways to achieve this result, (1) the United States and Stevens must be transferees of a voidable transfer, and (2) the Holloways must be able to stand in the shoes of the trustee under § 724(a). Neither the United States or Stevens have received property from a transaction that is voidable under the sections identified in § 502(d); specifically, §§ 522(f), 522(h), 544, 545, 547, 548, 549, and 724(a). The parties have stipulated that the United States holds a properly perfected tax lien and Stevens holds a judgment lien. The only conceivable section that might be applicable to these liens is § 724(a). The Holloways contend that because the trustee did not attempt to avoid the tax penalty or punitive damages judgment under § 724(a), the Holloways have standing to proceed under § 502(d) and do what the trustee failed to do—move

to avoid the liens. This argument fails in two ways. First, § 502(d) is "intended to have the coercive effect of insuring compliance with judicial orders." *Campbell v. United States,* 889 F.2d 658, 661 (5th Cir. 1989); *see also Committee of Unsecured Creditors v. Commodity Cred. Corp. (In re KF Dairies* ), 143 B.R. 734, 737 (9th Cir. BAP 1992)("Section 502(d) operates to disallow claims of transferees who do not surrender their avoidable transfers. It does not compel the surrender, nor permit affirmative relief of any kind."). There are no judicial orders requiring the turnover of the alleged voidable transfers.

■ Second, even if § 502(d) did not require a voidable transfer, the Holloways would have to proceed under § 724(a) as referenced in § 502(d). As discussed below, § 724(a) is designed for the trustee's use only. To allow a junior lienholder to circumvent the clear language of § 724(a) by proceeding under the cover of § 502(d) would allow them to do indirectly what they cannot do directly. If this was Congress's intent, it could have used the term "any creditor" in § 724(a) rather than specifically limiting an action under § 724(a) to "the trustee."

## SECTION 724(a)

■ Through § 502(d), the Holloways are attempting to use § 724(a) to avoid the United States's pre-petition tax penalty and Stevens's claim for punitive damages. Section 724(a) states that "[t]he trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." 11 U.S.C. § 724(a). The claims referred to in § 726(a)(4) concern any "fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages . . . to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim." 11 U.S.C. § 726(a)(4). The Holloways' position is that because the

---

**9.** The other sections of the code cited in § 502(d) are not applicable in this proceed-ing.

trustee did not avoid the liens of the United States and Stevens under § 724(a), the Holloways can avoid those liens through § 502(d).

The United States Supreme Court recently discussed the use of the term "trustee" in relation to certain powers allowed under the code. It began by stating that "Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000)(quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). In analyzing the issue, the Court stated:

> Here the statute appears quite plain in specifying who may use § 506(c)—"[t]he trustee." It is true, however, as petitioner notes, that all this actually "says" is that the trustee may seek recovery under the section, not that others may not. The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes.

*Id.* (footnote omitted). The Court listed three contextual features that support its conclusion of exclusivity: (1) when a statute authorizes specific action and names the party empowered to take that action, it is not appropriate to presume nonexclusivity; (2) because the trustee plays a unique role in bankruptcy proceedings, it is plausible that Congress provided a power to him and not to others; and (3) had Congress intended the code provision to be broadly available, it could have said so. *Id.* The Court then cited two code provisions that allow broader use of the provisions: § 502(a) ("provides that a claim is allowed unless 'a party in interest' objects") and § 502(b)(4) ("allows 'an entity' to file a request for payment of an administrative expense"). *Id.,* 530 U.S. 1, 120 S.Ct. at 1948. According to the Court, the "broad phrasing" of those sections supports its conclusion that when Congress says "trustee," other entities are not entitled to use that section. *Id.*

Section 724(a) is not broadly phrased. It states that "[t]he *trustee* may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." 11 U.S.C. § 724(a) (emphasis added). Even if § 502(d) allowed the Holloways to stand in the shoes of the trustee, the clear language of § 724(a) prevents them from proceeding under that section of the code.

This conclusion is reinforced when one considers the reference to § 724(a) in § 551. Section 551 states that "[a]ny transfer avoided under section ... 724(a) of this title ... is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. Even if the Holloways were allowed to proceed under § 724(a), the avoided transfers would have to benefit the estate, according to § 551. Because liquidation of the creditor's property did not raise sufficient funds to pay all of the secured creditors, the only persons who would benefit from the avoided transfers would be junior lienholders. According to Collier on Bankruptcy, preserving the lien for the benefit of the estate "operates to preserve the value of the lien for creditors generally and thus prevents junior lienors from improving their position at the expense of the estate." 6 Collier on Bankruptcy ¶ 724.02.[3], at 724–6 (15th ed. rev.)(2000); *accord Tennessee Mach. Co., Inc. v. Tennessee Mach. Co. (In re Appalachian Energy Indus. Inc.),* 25 B.R. 515, 516 ("Section 551 is intended to prevent the windfall to junior lienors that would otherwise result when a trustee in bankruptcy successfully avoids a senior lien on property. Without the authority to preserve under § 551, the avoidance of a lien would shift rank and priorities and each junior lienor would realize an enhancement of its position.").

■ The purpose of § 724(a) is to protect unsecured creditors from the debtor's wrongdoings. *See* 3 Norton Bankruptcy Law and Practice 2d § 71:2, at 71–2 (1997).

An unsecured creditor would benefit from the trustee's avoidance of the liens described in § 726(a)(4) because they would be paid under the distribution scheme set forth in § 726, and benefit from the trustee's avoidance of the liens securing penalties and punitive damages assessed against the debtor. Understandably, if the unsecured creditors would not benefit from the avoidance of the liens that secure a claim of the kind specified in § 726(a)(4), the trustee would not attempt to avoid the liens pursuant to § 724(a).

### SECTION 726(a)(4)

Because the Holloways raise two additional issues relating to § 726(a), this Court will address those concerns. First, because § 726(a)(4) states that it applies to the payment of any allowed claim, *whether secured or unsecured,* the Holloways contend that secured claims for tax penalties and punitive damages, such as the United States's and Stevens's claims, must be subordinated to all other classes of claims. This reading assumes the direct application of § 726(a)(4) to claims for penalties and punitive damages. Under § 726(a)(4), a secured claim would arise by virtue of the trustee avoiding a secured claim for tax penalties or punitive damages pursuant to § 724(a). *See* 3 Norton Bankruptcy Law and Practice 2d § 73:6, at 73–9 (1997). Because the trustee can avoid a secured lien pursuant to § 724(a), the claims listed in § 726(a)(4) will be either secured or unsecured. This does not automatically subordinate pre-petition, noncompensatory tax penalties and punitive damages to all other classes of claims, as argued by the Holloways.

Second, distribution of property of the estate under § 726(a) occurs after the trustee has disposed of "any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title." 11 U.S.C. § 725. In other words, § 726 deals with the final distribution of assets of the estate. A leading treatise states the distribution scheme succinctly:

> A secured claim by its very nature is entitled to be paid in full out of the proceeds of the collateral that secures it ... before any of those proceeds may be used to pay unsecured claims. This principle is recognized in Section 725. The liquidation proceeds that are available for unsecured creditors (including both the proceeds of collateral remaining after the satisfaction of valid liens and the proceeds of free assets of the estate) are then distributed in accordance with Section 726.

George M. Treister et al., Fundamentals of Bankruptcy Law 289 (A.L.I.2d ed.1991). Because there are no remaining funds in the estate to be distributed to unsecured creditors, § 726 is not applicable to this proceeding.

### SECTION 510(c)

The Holloways also contend that this Court can use 11 U.S.C. § 510(c) to equitably subordinate the United States's claim for pre-petition penalties and Stevens's claim for punitive damages. They cite as authority for this position *Schultz Broadway Inn v. United States,* 912 F.2d 230 (8th Cir.1990). In *Schultz,* a chapter 11 case, the bankruptcy court, using § 510(c), subordinated the United States's negligence penalty assessed against Schultz Broadway Inn for the underpayment of taxes pursuant to 26 U.S.C. § 6653(a). The district court affirmed the bankruptcy court, and the government appealed. In finding that § 510(c) was applicable to chapter 11 cases as well as chapter 7 cases, the Eighth Circuit Court of Appeals stated that chapter 7 cases were "more conducive to a uniform rule subordinating penalty claims than is a chapter 11." *Schultz,* 912 F.2d at 233 (finding that § 510(c) should be used on a case by case basis in chapter 11). The court further stated that "in the chapter 7 context, a uniform rule subordinating penalty claims recognizes that ordinary creditors should

receive protection from debtors' punitive obligations." *Id.* Likewise, the Holloways state in their Amended Motion For Partial Summary Judgment that this Court's focus "should be on the harm done to the competing disadvantaged creditors (Lori and James Holloway) as a result of the wrongful actions of Debtor Odom Antennas" and allow the equitable subordination of the United States's and Stevens's respective claims. Am. Mot. For Partial Summ. J. at 18.

The United States Supreme Court considered the scope of a bankruptcy court's power of equitable subordination in *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). After a discussion of the history of equitable subordination, it held that a bankruptcy court "may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities." *Id.* at 536, 116 S.Ct. 1524. The Court recognized that, although Congress did not include explicit criteria for equitable subordination when it drafted § 510(c), its reference to "principles of equitable subordination" indicated congressional intent to "at least start with existing doctrine." *Id.* at 539, 116 S.Ct. 1524. The existing doctrine to which the Court refers is set forth in *In re Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir.1977). In addition to recognizing that equitable subordination could be triggered by a showing that the creditor had engaged in "inequitable conduct," *Mobile Steel* discussed two further conditions: "that the misconduct have 'resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant,' and that the subordination 'not be inconsistent with the provisions of the Bankruptcy Act.' " *Id.* at 538–39, 116 S.Ct. 1524. The Court stated that "[t]his last requirement has been read as a 'reminder to the bankruptcy court that although it is a court of equity, it is not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because the court perceives that the result is inequitable.' " *Id.*

at 539, 116 S.Ct. 1524 (quoting DeNatale & Abram, The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors, 40 Bus. Law 417, 428 (1985)).

The Court recognized that many courts of appeals, in looking at existing doctrine, have continued to require inequitable conduct before allowing equitable subordination. The Court also acknowledged that several courts, including the Eighth Circuit in *Schultz,* have done away with that requirement when the claim in question was a tax penalty. *Id.* at 539–40, 116 S.Ct. 1524. The Court concluded that,

> the adoption in § 510(c) of "principles of equitable subordination" permits a court to make exceptions to a general rule when justified by particular facts.... But if the provision also authorized a court to conclude on a general, categorical level that tax penalties should not be treated as administrative expenses to be paid first, it would empower a court to modify the operation of the priority statute at the same level at which Congress operated when it made its characteristically general judgment to establish the hierarchy of claims in the first place.... We find such a reading improbable in the extreme. "Decisions about the treatment of categories of claims in bankruptcy proceeding ... are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination...." *Burden,* 917 F.2d at 122 (Alito, J., concurring in part and dissenting in part).

*Id.* at 540–41, 116 S.Ct. 1524 (citations omitted)(quoting *Burden v. United States,* 917 F.2d 115 (3d Cir.1990)). To conclude that tax penalty claims are, by their very nature, susceptible to subordination, would result in the consistent application of equitable subordination on the "supposedly general unfairness" of satisfying those claims. *See id.* at 541, 116 S.Ct. 1524. This is precisely what the *Schultz* court did when it stated that "a uniform rule subordinating penalty claims recognizes

that ordinary creditors should receive protection from debtors' punitive obligations." *Schultz*, 912 F.2d at 233. The *Noland* Court concluded by holding that "the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Code." *Id.* at 543, 116 S.Ct. 1524.

 The facts before this Court do not indicate any misconduct on the part of the United States or Stevens in obtaining their respective liens. Although the tax penalty before the *Noland* Court was a post-petition noncompensatory tax penalty, *see id.* at 536, 116 S.Ct. 1524, the rule of law stated by the Court is applicable to the United States's prepetition tax penalty and Stevens's punitive damages claim. Without evidence of misconduct, this Court will not use the doctrine of equitable subordination to circumvent the priorities established by Congress. According to those priorities, § 726 does not come into play until the trustee has distributed property pursuant to § 725. Because liquidation of the debtor's property did not raise sufficient funds to pay all of the secured creditors under § 725, the priorities listed in § 726 are not relevant in this case.

### CONCLUSION

Based on the above discussion, the Holloways' Motion For Partial Summary Judgment is denied. The Court finds that the Holloways cannot proceed under § 502(d) for the purpose of avoiding the United States's pre-petition tax penalty or Stevens's punitive damages claim under § 724(a), and do not have standing to bring a separate action under § 724(a). Further, § 510(c) is not applicable because the conduct of the United States and Stevens is not the type of conduct that would be subject to equitable subordination. Because no corresponding Motion For Summary Judgment was filed by the United States or Stevens, a hearing to determine the amounts to be distributed to the respective parties according to the priorities to which the parties stipulated on September 8, 2000, shall be set by subsequent order.

IT IS SO ORDERED.