**In re GRAYCARR, INC., Debtor.**

**Jill Jacoway, Trustee, Plaintiff,**

**v.**

**Department of Treasury—Internal Revenue Service and Arvest Bank.**

No. 5:04–bk–73725.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Aug. 18, 2005.

John T. Lee, for the trustee.

Jill Jacoway, chapter 7 Trustee.

Stephanie Page, for the IRS.

Stanley Bond, for the debtor.

## MEMORANDUM OPINION AND ORDER

RICHARD D. TAYLOR, Bankruptcy Judge.

Before the Court is a Motion For Imposition of Automatic Stay, Motion For Dis-

solution of Garnishment, Motion to Disallow or Subordinate Claim, and Motion For Sanctions and Punitive Damages filed by Jill Jacoway, chapter 7 trustee [the trustee], on June 9, 2005; and the United States' Opposition to Trustee's Motion For Imposition of Automatic Stay, Motion For Dissolution of Garnishment, Motion to Disallow or Subordinate Claim, and Motion For Sanctions and Punitive Damages filed by the United States [IRS] on July 15, 2005. The Court held a hearing on July 28, 2005, at which time it took the matter under advisement. Arvest Bank did not appear at the hearing.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (O). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable under Federal Rule of Bankruptcy Procedure 9014.

BACKGROUND

The debtor filed a no-asset chapter 7 case on June 1, 2004, at which time Jill Jacoway was appointed trustee. The case was reclassified as an asset case on July 2, 2004. Based on information provided by the debtor, the trustee filed a Form 941 federal employment tax return on behalf of the estate for the period ending June 30, 2004. According to the IRS's Request For Payment dated November 15, 2004, the tax due on the Form 941 submitted by the trustee was $1887.91. In its Request For Payment, the IRS made an adjustment based on a payment in the amount of $798.34 received on May 17, 2004, leaving a $1089.57 balance. With the penalties and interest, the total tax owed, according to the IRS, was $1274.57. The IRS's Request For Payment was addressed to JILL JACOWAY TTEE IN BKCY, GRAYCARR INC BKCY.

In a letter to the IRS Insolvency Section, Little Rock, Arkansas, dated December 22, 2004, the trustee stated, "I assume that the bankruptcy estate actually owes this money and I have plenty of money in the estate account to pay this debt. I cannot, however, pay from this notice." Trustee Ex. 2. She requested that the IRS file a proof of claim so that she could then pay the claim.

In a letter dated February 5, 2005, the IRS sent a Final Notice of Intent to Levy and Notice of Your Right to a Hearing to the trustee. The first two sentences of the letter state, "We've written to you before asking you to contact us about your overdue taxes. You haven't responded or paid the amounts you owe." Trustee's Ex. 7. According to the letter, the 941 tax owed by JILL JACOWAY TTEE IN BKCY for the period ending June 30, 2004, including accrued interest and late payment penalty, was $1331.49. The letter also explained the process by which the IRS would collect the tax and what the trustee should do if she disagreed. In her letter dated March 1, 2005, addressed to the return address on the Final Notice of Intent to Levy, the trustee explained the events that had transpired and again stated that, "I truly believe that someone from your organization needs to file a Proof of Claim in this bankruptcy estate, and do so soon.... My Final Report does not provide any payment to the IRS as the IRS has never filed a Proof of Claim." Trustee's Ex. 9. On January 18, 2005, the trustee sent her Final Report to the United States Trustee's office for audit. On May 9, 2005, the trustee filed her Final Report with the Clerk of the Court, and on May 18, 2005, the United States Trustee's office filed its Certification of Review of the Final Report.

The IRS sent another Request For Payment in a letter dated February 14, 2005, for tax due in the amount of $52.45. According to the IRS's Request For Payment, the payment was for Federal Unemployment Tax for the period ending December 31, 2004. The tax due reflected on the return submitted by the trustee was $143.37. In its Request For Payment, the IRS made an adjustment based on a payment in the amount of $91.28 received on April 15, 2004, leaving a $52.09 balance. With the penalties and interest, the total tax owed, according to the IRS, was $52.45. The IRS's Request For Payment was addressed to JILL JACOWAY TTEE IN BKCY, GRAYCARR INC BKCY.

In a letter dated March 21, 2005, the IRS sent a notice of intent to levy on certain assets to the trustee. The letter states, "Our records indicate that you haven't paid the amount you owe.... This is your notice, as required by the Internal Revenue Code Section 6331(d), of our intent to levy (take) any state tax refunds that you may be entitled to if we don't receive your payment in full." Trustee's Ex. 10. According to the letter, the tax owed by JILL JACOWAY TTEE IN BKCY for the period ending December 31, 2004, including penalty and interest, was $52.96.

On May 23, 2005, the IRS generated a Notice of Levy, which it served on Arvest Bank. The total amount of the levy relating to the Form 941 tax was $1386.94, which included the unpaid balance of the assessment in the amount of $1274.57 and statutory additions in the amount of $112.37. Upon receiving the Notice of Levy, Arvest Bank advised the trustee in a letter dated May 31, 2005, of the Notice of Levy and that the amount would be debited from the estate's account and released to the IRS on June 21, 2005. On June 9, 2005, the trustee filed the present motion. On June 13, 2005, Joyce Shead, an employee of the IRS located in Little Rock, Arkansas, faxed a Form 668–D, Release of Levy/Release of Property From Levy, to Arvest Bank. Under the terms of Form 668–D, "all property, rights to property, money, credits, and bank deposits of the taxpayer(s) named above are released from the levy." Trustee's Ex. 12. The taxpayer was listed as Jill Jacoway, TTEE in Bkcy, Graycarr, Inc. Bkcy.

On June 14, 2005, the IRS filed its administrative claim in the amount of $1141.66. This included the Form 941 tax in the amount of $1089.57 and the unemployment tax in the amount of $52.09.

POSITIONS OF THE PARTIES

The trustee argues that the levy by the IRS was a violation of the automatic stay and an attempted unauthorized post-petition transfer of property of the estate. She also believes the IRS's claim should be subordinated under 11 U.S.C. § 510(c)(1), or disallowed. Because of the IRS's actions, distribution of the estate to creditors has been delayed and the trustee has incurred additional costs in administering the estate. She is asking the Court to sanction the IRS in the amount of $1000 for her legal expenses in responding to the levy and bringing the current action. She is also asking for an additional sanction in the amount of $1000 to Arvest Bank for having to respond and defend against her action, and $5000 in punitive damages to deter similar collection efforts by the IRS.

The IRS contends that the Court lacks subject matter jurisdiction over the trustee's damage claim because the trustee failed to exhaust her administrative remedies under 26 U.S.C. § 7433. The IRS admits it violated the automatic stay, but that it had no intent to violate the stay; the violation occurred because of its automated computer system. It also argues

that the requested damages to Arvest Bank are not recoverable because the damages must be a result of direct economic damages suffered by the trustee. Further, Arvest Bank has not alleged any damages in this matter. The IRS also argues that punitive damages are not applicable because the IRS did not waive its sovereign immunity so as to permit punitive damages under 11 U.S.C. § 106(a)(3). Finally, the IRS does not believe subordination of its claim is appropriate because there was no misconduct by the IRS resulting in harm to other creditors or any other equitable ground to permit subordination. The levy was released before any funds transferred and the IRS will not receive any more than it would have received had there been no violation of the stay.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Automatic Stay

 As a preliminary matter, the Court finds that the IRS violated the automatic stay. Under the code, when a debtor files a petition in bankruptcy, the petition "operates as a stay, applicable to all entities, of . . . (3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 342(a)(3), (4). The code excepts from the automatic stay provisions,

> the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are trans-

ferred out of the estate to, or otherwise revested in, the debtor).

11 U.S.C. § 362(b)(9)(D). In this instance, the IRS sent to the trustee a Request For Payment dated November 15, 2004, in an attempt to obtain funds from the estate. The Court believes that the Request For Payment falls within the purview of § 362(b)(9)(D) of the code and is not a violation of the automatic stay. *See Covington v. Internal Revenue Serv.* (*In re Covington*), 256 B.R. 463, 466 (Bankr. D.S.C.2000). However, the IRS's collection actions continued through its Notice of Levy dated May 23, 2005, which was mailed to Arvest Bank. The mailing of the Notice of Levy constitutes a collection effort by the IRS and advises the taxpayer of specific consequences if payment is not made within a specified period of time. It is not an assessment and demand for payment and is not excepted from the automatic stay by § 362(b)(9)(D). That action by the IRS is sufficient for the Court to find that the IRS violated the automatic stay. In fact, the IRS admitted at trial that it had violated the automatic stay.

 The Court also finds that the violation of the automatic stay was willful. According to the Eighth Circuit Court of Appeals, "[a] willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia Lumber Co.* (*In re Knaus*), 889 F.2d 773, 775 (8th Cir.1989). The IRS had knowledge of the debtor's bankruptcy as evidenced by the address to which it mailed the Request For Payment: JILL JACOWAY TTEE IN BKCY, GRAYCARR INC BKCY. Even after the trustee wrote to the IRS Insolvency Section in Little Rock, Arkansas, the IRS continued with its efforts to collect funds from property of the estate. The Court finds that the IRS acted deliberately with knowledge of the debtor's

bankruptcy petition, and, therefore, willfully violated the automatic stay.

 The IRS claims that the Court does not have subject matter jurisdiction over the trustee's claim for damages relating to the violation of the automatic stay because the trustee failed to exhaust her administrative remedies before filing her motion with the bankruptcy court. It cites the Court to 26 U.S.C. § 7433 and Treasury Regulation § 301.7433–2(d) as authority for this position. The statute states, in relevant part:

§ 7433. Civil damages for certain unauthorized collection actions

(a) In general.—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

(b) Damages.—In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000 in the case of negligence) or the sum of—

(1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and

(2) the costs of the action.

. . .

(d) Limitations—

(1) Requirement that administrative remedies be exhausted.—A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

. . .

(e) Actions for violations of certain bankruptcy procedures.—

(1) In general.—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), or any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.

(2) Remedy to be exclusive.—

(A) In general.—Except as provided in subparagraph (B), notwithstanding section 105 of such title 11, such petition shall be the exclusive remedy for recovering damages resulting from such actions.

(B) Certain other actions permitted.—Subparagraph (A) shall not apply to an action under section 362(h) of such title 11 for a violation of a stay provided by section 362 of such title; except that—

(i) administrative and litigation costs in connection with such action may only be awarded under section 7430; and

(ii) administrative costs may be awarded only if incurred on or after

the date that the bankruptcy petition is filed.

26 U.S.C. § 7433.

Three interrelated subsections form the core of § 7433 as it relates to this proceeding. Subsection (e) specifically relates to a willful violation of the automatic stay and allows the taxpayer to petition the bankruptcy court to recover damages related to that violation. Subparagraph (2)(A) of subsection (e) states that the petition shall be the exclusive remedy for recovering damages. "Exclusive" is not defined in the statute; however, at least one bankruptcy court has determined that because subsection (e) is devoted exclusively to bankruptcy violations and there is no mention of the need to exhaust administrative remedies in that subsection, a petition filed with the bankruptcy court fulfills the requirements of § 7433(e). *See In re Graham*, No. 99–26549–DHA, 2003 WL 21224773, at *2 (Bankr.E.D.Va. April 11, 2003). However, this ignores the precise wording of subsection (b), the damages clause for both subsections (a) and (e), both of which are limited by subsection (d)(1). "Exclusive," in this instance, can only mean that once the administrative remedies have been exhausted—as required by § 7433(b), (d), *and* (e)—the taxpayer may file a petition with the bankruptcy court to determine the damages resulting from an alleged willful violation of the automatic stay. This is consistent with the jurisdiction granted to the bankruptcy courts to hear and determine all cases under title 11 and core proceedings arising under title 11 or arising in a case under title 11. 28 U.S.C. § 157(b).

Subsection (b) is the statutory provision that defines and limits damages available under subsection (e) to the lesser of $1,000,000 or actual, direct economic damages and the costs of the action. Subsection (e) was included in the damages section as a result of a 1998 amendment to the code. Internal Revenue Serv. Restructuring & Reform Act of 1998, Pub.L. No. 105–206, 112 Stat. 685. Subsection (d) states that a judgment for damages shall not be awarded under subsection (b)— which includes a petition filed under subsection (e)—unless the taxpayer first exhausts her administrative remedies within the Internal Revenue Service. Although the petition referred to under subsection (e) is the exclusive remedy available under § 7433 for violations of the automatic stay, before that remedy is available the taxpayer must exhaust her administrative remedies, which are set forth in the Treasury Regulations.

In this case, the trustee did not exhaust her administrative remedies. Accordingly, the Court finds that it does not have subject matter jurisdiction over the trustee's claim for damages at this time, and denies without prejudice the trustee's motion for sanctions and punitive damages relating to the IRS's willful violation of the automatic stay.

Disallowance of Claim

The trustee has also asked the Court to disallow the IRS's late filed claim. The IRS filed its proof of claim on June 14, 2005. The last day for filing a timely claim was 180 days after the date of the order for relief, June 1, 2004. Fed. R. Bankr.P. 3002(c)(1). This means that the IRS had until November 28, 2004 to file a timely claim.

Under the bankruptcy code, a claim shall be allowed unless it falls within one of the nine exceptions set forth in 11 U.S.C. § 502(b). *See Dove–Nation v. eCast Settlement Corp. (In re Dove–Nation )*, 318 B.R. 147, 153 (8th Cir. BAP 2004). In this case, the only exception under § 502(b) that may apply is subsection (9), which states that the court shall allow a claim

after an objection is raised except to the extent that:

> (9) proof of such claim is not timely filed, *except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title* or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

11 U.S.C. § 502(b)(9) (emphasis added). Included in this subsection is an exception to the exception. Section 726(a) relates to distribution of property of the estate. The first distribution specifically allows tardily filed claims if two conditions are met: (1) the tardily filed claim is filed before the date on which the trustee commences distribution under 11 U.S.C. § 726(a), and (2) the claim is of the kind specified in 11 U.S.C. § 507. 11 U.S.C. § 726(a)(1). In this instance, the IRS meets both conditions. First, the trustee testified that the actions by the IRS have delayed her ability to make distributions from the estate, and the IRS filed its claim on June 14, 2005, before distributions were made under § 726(a). Second, the IRS's claim is for Form 941 and unemployment taxes, which are employment taxes that were, according to the trustee, incurred prepetition. Section 507(a)(8)(D) includes allowed unsecured claims of governmental units to the extent such claims are for "an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not paid before such date . . . ." 11 U.S.C. § 507(a)(8)(D).

By meeting both conditions under § 726(a), the IRS's tardily filed claim does not fall within one of the nine exceptions listed in § 502(b). Under the plain meaning of the statute, the IRS's claim is allowed and the Court overrules the trustee's objection to the claim of the IRS.

Subordination

 Finally, the trustee also moved the Court to subordinate the claim of the IRS under 11 U.S.C. § 510(c). Section 510(c) provides that, "after notice and a hearing, the court may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . . ." 11 U.S.C. § 510(c). Application of the doctrine is at the discretion of the court. *BankWest, Inc. v. United States By and Through Farmers Home Admin.,* 102 B.R. 738, 741 (D.S.D.1989); *see also Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.),* 269 F.3d 726, 744 (6th Cir.2001) (stating that a court is permitted to, not required to, subordinate a claim). The test that most district courts and courts of appeal follow is found in *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692 (5th Cir.1977). *United States v. Noland,* 517 U.S. 535, 538–39, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (recognizing *Mobile Steel* as an "influential" opinion). It is a three-part test that requires the following: " '(i) The claimant must have engaged in some type of inequitable conduct. (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].' " *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)* 850 F.2d 1275, 1282 (8th Cir.1988) (quoting *Wilson v. Huffman (In re Missionary Baptist Found.),* 712 F.2d 206, 212 (5th Cir.1983) and citing other cases).

In order to determine whether equitable subordination is appropriate, the Court must first determine whether the creditor engaged in some sort of inequitable conduct. Without a showing of inequitable conduct, the remaining two prongs of the test are not applicable and the Court cannot subordinate the claim. *In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir.1997); *Bellanca Aircraft Corp.*, 850 F.2d at 1282–83. Inequitable conduct has been regarded as a wrong or unfairness or, "at the very least, a masquerade of something for what it is not." *Lifschultz Fast Freight*, 132 F.3d at 344. Typically, inequitable conduct falls into one of the following categories: (1) fraud, illegality, or breach of fiduciary duties; (2) undercapitalization; or (3) the creditor's use of the debtor as a mere instrumentality or alter ego. *Id.* at 344–45. In this instance, the Court cannot find that any inequitable conduct took place sufficient to subordinate the claim of the IRS and the Court "will not use the doctrine of equitable subordination to circumvent the priorities established by Congress." *Rice v. United States d/b/a Internal Revenue Serv. (In re Odom Antennas, Inc.)*, 258 B.R. 376, 387 (Bankr.E.D.Ark.2001). Accordingly, the Court denies the trustee's request that the IRS's claim be subordinated to the claims of other creditors.

Conclusion

The Court does not have subject matter jurisdiction to determine appropriate damages, if any, until the trustee exhausts her administrative remedies available within the Internal Revenue Service. Accordingly, the trustee's motion for sanctions and punitive damages relating to violation of the automatic stay is denied without prejudice. The Court also finds that the IRS tardily filed a proof of claim in this case, but for the reasons stated above, the claim shall be allowed and the trustee's objection to the claim is overruled. Finally, the Court finds that the IRS did not engage in any inequitable conduct and its claim should not be subordinated to the claims of other creditors. The Court denies the trustee's motion to subordinate the claim.

IT IS SO ORDERED.