**In re Byron JHA, Debtor.**

No. 08–53283–ASW.

United States Bankruptcy Court,
N.D. California.

Oct. 5, 2011.

damages against the United States of America, Internal Revenue Service ("IRS"), for violation of the automatic stay. The IRS concedes that the IRS violated the automatic stay by sending nine Notice of Intent to Levy letters to Debtor post-petition. Debtor also seeks a determination that the IRS violated the automatic stay by not revising the amount of withholdings from Debtor's post-petition wages that were subject to a letter sent by the IRS pre-petition to Debtor's employer setting the amount of taxes to be withheld from Debtor's wages. The IRS opposes that aspect of the Motion as well as Debtor's damages.

The Court heard lengthy oral argument on the Motion and the matter was taken under submission upon the filing of supplemental pleadings by the IRS. Debtor is represented by Cathleen Cooper Moran, Esq. of Moran Law Group, Inc. Special Assistant United States Attorney Chong S. Hong, Esq. represents the IRS.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Cathleen Cooper Moran, Moran Law Group, Inc., Mountain View, CA, for Debtor.

## MEMORANDUM DECISION RE MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

ARTHUR S. WEISSBRODT, Bankruptcy Judge.

Before the Court is the motion ("Motion") by debtor Byron Jha ("Debtor") for

I.

### FACTS

Pre-petition, on or about August 3, 2007, Debtor provided a Form W–4 Employee's Withholding Allowance Certificate ("Withholding Request") to Debtor's employer requesting that Debtor's federal income tax withholding be based on single status with 5 withholding allowances.[1]

On April 17, 2008, the IRS sent a letter to Debtor ("Lock-in Letter")[2] informing

---

1. Exhibit B to the Declaration of Chong S. Hong in Support of Supplemental Response to Motion for Damages for Violation of Stay, filed on December 15, 2008 ("Hong Dec.").

2. Exhibit B to Debtor's Motion for Damages Against the United States of America, Internal Revenue Service for Violation of the Automatic Stay, filed on September 17, 2008 ("Debt-

Debtor that the IRS was going to instruct Debtor's employer to disregard the Withholding Request and instead instruct Debtor's employer to withhold income tax from Debtor's wages based on a marital status of single and no withholding allowances. The Lock-in Letter was sent based on a Withholding Compliance Referral dated February 29, 2008. The Withholding Compliance Referral was based on the fact that Debtor had owed taxes for every year since 1999 and Debtor had not voluntarily changed Debtor's Form W–4.[3] Specifically, for the tax years 2001–2007, Debtor under-withheld taxes as follows:

| Tax Year | Tax Per Return | Withholding Credit | Underwithholding |
| --- | --- | --- | --- |
| 2001 | $26,937 | $15,540 | $11,397 |
| 2002 | $26,026 | $7,876 | $18,150 |
| 2003 | $17,718 | $2,637 | $15,081 |
| 2004 | $10,931 | $7,211 | $3,720 |
| 2005 | $14,316 | $9,825 | $4,491 |
| 2006 | $11,639 | $6,898 | $2,495 [4] |
| 2007 | $15,233 | $10,411 | $4,822 |

Debtor's bankruptcy schedules filed on July 8, 2008 show Debtor owed the IRS an aggregate of $145,575.00 in secured, priority and unsecured taxes for the tax years 1999–2007.

The Lock-in Letter provided that if Debtor disagreed with the IRS' determination of the withholding allowance, Debtor was to call the IRS at a telephone number provided in the Lock-in Letter and explain to the IRS why Debtor would be entitled to a different marital status and/or number of withholding allowances. Debtor could also contest the proposed withholding allowances in writing. If the IRS did not hear from Debtor within 30 days from the date of the Lock-in Letter, Debtor's employer was instructed to withhold taxes at the status and allowance provided by the Lock-in Letter. The Lock-in Letter provided that if Debtor believed at a later time that Debtor was entitled to claim a different marital status and/or more withholding allowances than the IRS determined, Debtor could complete a new Form W–4 as well as a written statement to support the claims made on the new Form W–4 and submit both documents to the IRS at an address provided in the Lock-in Letter. The Lock-in Letter withholding allowances took effect sometime after the pay date of May 23, 2008.[5] The Lock-in Letter increased the amount withheld by $148.97 per two-week pay period.[6]

On June 23, 2008, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. According to Debtor's schedules filed on July 8, 2008, Debtor is a

or's Motion") and attached to this Memorandum Decision.

**3.** Exhibit A to the Declaration of Cathleen Cooper Moran in Support of Motion for Damages for Violation of Stay, filed on July 22, 2009 ("Moran Dec").

**4.** Debtor made 2 estimated tax payments in 2006 in the amount of $1,123 each, resulting in total credits of $9,144 for 2006.

**5.** Exhibit A to Declaration of Byron Jha in Support of Motion for Damages for Violation of Stay, filed on September 17, 2008 ("Original Jha Dec").

**6.** Exhibit B to Original Jha Dec.

single father with two minor children.[7] At the time Debtor filed Debtor's bankruptcy petition, Debtor earned $5,384.57 per month working as an operations manager,[8] and his monthly expenses were $4,855.00.[9] Debtor's only significant asset is a 2004 Dodge Caravan.[10]

Debtor scheduled secured debt on the 2004 Dodge Caravan and for income taxes owed to the IRS.[11] Debtor scheduled priority taxes owed to the IRS in the amount of $18,500.00 on Schedule E. Debtor also scheduled $163,995.00 in unsecured claims on Schedule F, of which $126,500.00 was for income taxes owed to the IRS for the years 1999–2003, plus dischargeable penalties.

On June 24, 2008, Debtor's bankruptcy counsel, Ms. Moran, provided notice of the commencement of Debtor's bankruptcy case to the IRS Special Procedures office in San Jose.[12] On July 4, 2008, the Bankruptcy Noticing Center sent a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines to the IRS.

On July 3, 2008, Ms. Moran left a substantive message for IRS attorney James Whitten.[13] On July 16, 2008, Ms. Moran called Mr. Whitten who referred Ms. Moran to IRS attorney Chong Hong.[14] On July 16, 2008, Ms. Moran called Mr. Hong and faxed to Mr. Hong a copy of the Lock-in Letter.[15]

Also on or about July 16, 2008, Debtor received in the mail nine separate Notices of Intent to Levy issued by the IRS relating to Debtor's delinquent taxes for the tax years 1999 through 2007.[16] On July 17, 2008, Ms. Moran called Mr. Hong and left a substantive message regarding the nine Notices of Intent to Levy.[17] The nine Notices of Intent to Levy caused Debtor increased stress such that Debtor took six vacation days from work and did not take Debtor's children on vacation as planned, representing $2,318.36 in earnings. Debtor spent an additional $20 on medication for stomach distress. On July 21, 2008, Ms. Moran received a telephone call from Mr. Hong confirming that the IRS would not pursue any levies or liens against Debtor.[18]

On July 23, 2008, the IRS filed its proof of claim against Debtor asserting a secured claim of $575.00; a priority claim of $16,904.79; and an unsecured claim of $124,588.85 for income taxes due for 1999–2007.

On August 6, 2008, Debtor filed an amended Chapter 13 plan to reduce the monthly plan payments from $525 per month to $300 per month for the first 12

---

**7.** *See* Schedule I.

**8.** Schedule I shows Debtor earned $5,384.57 per month working as an operations manager for Taymor Industries. This is Debtor's only source of income.

**9.** *See* Schedule J.

**10.** *See* Schedule A and Schedule B. Debtor's Schedule B lists personal property with a current market value of only $6,305.00—of which $5,730.00 is attributable to the 2004 Dodge Caravan.

**11.** The two secured claims noted on Schedule D is a tax lien by the IRS securing a claim of $575.00 and a lien for Debtor's 2004 Dodge Caravan in the amount of $9,677.00.

**12.** Moran Dec. at 1:24–26 and Exhibit A thereto.

**13.** Moran Dec. at 2:2.

**14.** Moran Dec. at 2:3–4.

**15.** Moran Dec. at 2:5–6.

**16.** Exhibit D to Debtor's Motion.

**17.** Moran Dec. at 2:7–8.

**18.** Moran Dec. at 2:9–10; Hong Dec. at 2:8.

months and provide for stepped-up plan payments thereafter because Debtor did not have sufficient income with the Lock-in Letter in place for Debtor to make the original proposed plan payments of $525. The attorneys fees associated with the amendment to Debtor's plan total $112.50.

Debtor filed this Motion on September 17, 2008 seeking damages for violation of the automatic stay for both the IRS sending the nine Notices of Intent to Levy sent post-petition as well as the IRS' failure to lift the Lock-in Letter post-petition.

The Lock-in Letter was in effect through December 2008.[19]

Debtor was entitled to a federal income tax refund of $5,131.00 for the 2008 tax year.[20]

## II.

### ANALYSIS

■ A party seeking damages for violation of the automatic stay must prove by a preponderance of the evidence that: (1) a bankruptcy petition was filed; (2) the debtor is an individual; (3) the creditor received notice of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor suffered damages. *In re Henry*, 328 B.R. 664, 667 (Bankr.E.D.N.Y.2005) (citations omitted). The first three elements are met in this case. The IRS concedes that the IRS' issuance of the nine Notices of Intent to Levy post-petition violated the automatic stay. The issues before the Court are whether: (1) the IRS' failure to lift the Lock-in Letter post-petition was a willful violation of the automatic stay; and (2) what, if any, damages, Debtor suffered as a result of any willful violation of the automatic stay.

### A. Lock-in Letter

Debtor asserts that the pre-petition Lock-in Letter impermissibly asserts control over property of Debtor's bankruptcy in violation of Bankruptcy Code § 362(a)(3), which provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities of—
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(3). According to Debtor, Bankruptcy Code § 1306(a)(2) classifies post-petition earnings as property of the bankruptcy estate. Because the Lock-in Letter required Debtor's employer to turn over wages in excess of the taxes owed for the tax year to which the Lock-in Letter applied, as demonstrated by the fact that Debtor received a federal income tax refund of over $5,000 for the 2008 tax year, the compulsory overwithholding of Debtor's wages violated the automatic stay.

The IRS contends that lock-in letters sent pre-petition do not violate the automatic stay for three reasons. First, lock-in letters are not an attempt to collect pre-petition taxes. Instead, lock-in letters only target withholding for the current tax year. Because Debtor did not bifurcate Debtor's tax year, all taxes due in 2008 are post-petition taxes. *See* 26 U.S.C. § 1398(d). Second, monies withheld by an employer are not property of the bank-

---

**19.** Declaration of Byron Jha in Support of Motion for Damages for Violation of Stay, filed on July 22, 2009 ("Jha Dec"), at 1:22–23.

**20.** Jha Dec. at 1:24–25.

ruptcy estate and, rather, are held in trust for the IRS. *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Third, even if monies withheld by an employer are considered to be property of the bankruptcy estate, the issuance of a lock-in letter falls within the exercise of police and regulatory powers exception of Bankruptcy Code § 362(b)(4). Because the Court determines that the monies withheld by Debtor's employer pursuant to the Lock-in Letter were not property of the estate, the Court does not address the IRS' argument that leaving the Lock-in Letter in place falls within the exercise of police and regulatory powers exception of Bankruptcy Code § 362(b)(4).

### 1. Nature and Purpose of Lock-in Letters

■ As explained by the United States Tax Court:

In 1943, Congress required the withholding of income taxes at the source on wages, see Current Tax Payment Act of 1943, ch. 120, 57 Stat. 126, and this pay-as-you-go system for employees has been in place ever since. Withholding alleviates the burden on wage earners of having to make large payments of tax at one time, and it benefits the Government not only by providing a more constant stream of receipts but also by protecting "against deaths, disappearances, and insolvencies, and to catch the itinerants who were moving from place to place with incomes taxable in the aggregate but with whom the Treasury could not keep pace." 13 Mertens, Law of Federal Income Taxation, sec. 47A.02, at 47A–8 (2005 rev.).

The Commissioner has described income tax withholding as other than a tax in itself. Rev. Rul. 60–220, 1960–1 C.B. 399; see sec. 3402; sec. 31.3402(a)–1, Employment Tax Regs. During the taxable year, a taxpayer's liability is incho-

ate and not precisely determinable. After the close of the year, however, the taxpayer determines his or her liability, reports it on a return, and offsets the tax withheld against that liability. If there is excess withholding, it may be claimed as an overpayment, and in most instances it is promptly refunded to the taxpayer.

There are those who may seek to avoid withholding by claiming to be exempt therefrom or by overstating their withholding allowances on Form W–4. The Commissioner's Withholding Compliance Program is designed to deal with such situations:

The mission of the Withholding Compliance Program is to ensure that taxpayers who have serious under-withholding problems are brought into compliance with federal income tax withholding requirements. The program uses Form W–2 Wage and Tax Statement (W–2) information to identify taxpayers with insufficient withholding. The goal is to correct withholding to ensure that taxpayers have enough income tax withheld to meet their tax obligations. [IRM 5.19.11.1(1) (May 1, 2006).]

Integral to the Withholding Compliance Program is the "Lock-in Letter":

Letters 2800C and 2801C, mailed to the employer and the taxpayer, respectively, are commonly known as the "lock-in letters". Letter 2800C instructs the employer to disregard the Form W–4 submitted by the taxpayer and withhold at the marital status and the number of allowances determined by the Service. Letter 2801C advises the taxpayer that the employer has been instructed to disregard the Form W–4 submitted by the taxpayer and withhold at the rate

specified in Letter 2800C. [IRM 5.19.11.3.2(1) (May 1, 2006).]

Internal Revenue Manual provisions contemplate taxpayer responses to "Lock-in Letters" and provide for redeterminations, specifically including a release of the "lock-in". *E.g.*, IRM 5.19.11.3.9 (May 1, 2006); IRM 5.19.11.3.10 (May 1, 2006). These provisions are based on authority granted by regulations. *See* sec. 31.3402(f)(2) –1(g), Employment Tax Regs.

*Davis v. Commissioner*, T.C. Memo.2008–238, 2008 WL 4703706, *4 (2008) (footnotes omitted).

The Court finds that the purpose of the Lock-in Letter was to insure Debtor's payment of taxes owed in 2008 by mandating Debtor's withholding allowance. The Lock-in Letter was issued solely because Debtor failed to provide for sufficient withholdings for at least seven years prior to the 2008 tax year. However, there is no evidence in the record that the Lock-in Letter attempted to collect taxes owed for any year prior to 2008.

The Lock-in Letter provided a 30–day opportunity for Debtor to provide information to the IRS and to seek an adjustment of the proposed withholding allowances. The Lock-in Letter also provided a mechanism for Debtor to seek adjustment to the withholding allowance after the initial 30–day period. Specifically, the Lock-in Letter provided in relevant part:

If you disagree with our determination please call us at the number shown below to explain why you are entitled to a marital status and/or number of withholding allowances (or complete exemption from withholding) different from that shown above. Please have the following information available to discuss. (If you file jointly you must have the same information available for your spouse.)

1. Form W4 and worksheet.
2. Most current pay stub. (If you have more than one job, the most current pay stubs for all of your jobs.)
3. Number of allowances you (and your spouse) are currently claiming on your Form(s) W–4.
4. The number of allowances you (and your spouse) are entitled to claim.
5. The Social Security Number and/or dates of birth for any children claimed on your return and a copy of your most recent Schedule A deductions (if any).

If you prefer, you may write to us at the address shown below. Please send a written statement to support your claim explaining why you are entitled to a marital status and/or number of withholding allowances (or complete exemption from withholding) different from that shown above.

In either case if we do not hear from you within 30 days from the date of this letter, your employer(s) has been instructed to withhold at the status and allowances shown above. If you later believe that you are entitled to claim a different marital status and/or more withholding allowances (or complete exemption from withholding) than we determined, you can complete a new Form W–4 and a written statement to support the claims made on the Form W–4. You must submit the Form W–4 and the written statement to us at the address shown below.

Lock-in Letter at pages 1–2.

Debtor's counsel, Ms. Moran, contacted the IRS on April 25, 2008 with respect to the Lock-in Letter. The IRS would not speak with Ms. Moran because the Tax Information Authorization Form, IRS Form 8821, signed by Debtor in March 2008 did not cover the current tax year,

2008. Ms. Moran concluded that by the time Ms. Moran obtained an updated IRS Form 8821 to include the 2008 tax year, Debtor would have filed Debtor's bankruptcy petition and the Lock-in Letter would be withdrawn upon the filing of Debtor's bankruptcy case. There is no evidence in the record that Debtor himself sought an adjustment to the proposed withholding allowances during the 30–day opportunity provided in the Lock-in Letter. There is also no evidence in the record that either Debtor or Debtor's counsel later completed a new Form W–4 and a written statement to support the claims made on the new Form W–4 and submitted those documents to the address in the Lock-in Letter.

### 2. Monies Withheld for Taxes Not Property of the Estate

■ Debtor and the IRS differ as to whether monies withheld from wages in excess of the amount necessary to insure that post-petition taxes are paid are property of the bankruptcy estate. Debtor contends that all of Debtor's wages—including the amount withheld for the payment of future taxes—belong to the Debtor and are property of the bankruptcy estate. The IRS asserts that under *Begier*, when funds are withheld from a debtor's wages, those funds are held in trust for the IRS and do not become property of the bankruptcy estate until the debtor has a right to a refund of overpaid taxes.

Debtor argues that the *Begier* case is inapposite because *Begier* involved an attempt by a chapter 7 trustee of an employer to recover as a preference monies that the employer debtor had paid pre-petition to the IRS on account of the debtor's withholding obligations for taxes withheld from the debtor's employees. The Supreme Court held that wage withholdings held by a debtor's employer are property of the IRS. According to Debtor, *Begier*

never held that: (1) wage withholdings held on behalf of a debtor are property of the IRS; or (2) the IRS is entitled to direct an employer to increase the amounts withheld and thereby transform the debtor's money into the IRS' money. Debtor is correct that *Begier* did not involve the same situation as is now before this Court. However, this Court finds that wages withheld by an employer at the time wages are due to be paid to a debtor are held in trust for the IRS and become property of the bankruptcy estate only in the form of a claim to a refund to any overpayment of withheld funds.

Internal Revenue Code § 3402 provides that, with certain exceptions, every employer paying wages shall deduct and withhold from those wages a tax in the amount determined by tables or computational procedures proscribed by the Secretary of the Treasury. 26 U.S.C. § 3402(a)(1). Withholding occurs at the time the net wages are paid to the employee. *Begier*, 496 U.S. at 60–61, 110 S.Ct. 2258. The employer is not liable to any person—including the employee—for the amount withheld. 26 U.S.C. § 3403; *Giles v. Volvo Trucks North America*, 551 F.Supp.2d 359, 363 (M.D.Pa.2008) (employer had no liability to employee where employer withheld taxes from the employee's wages in compliance with an IRS lock-in letter).

■ Taxes withheld by employers to pay income taxes are held in trust for the United States. *See* 26 U.S.C. § 7501; *see also* Treas. Reg. § 31.3402(a)–1(f). The trust is created at the time the wages are paid to the employee. *Begier*, 496 U.S. at 60–62, 110 S.Ct. 2258. The trust created under § 7501 creates a trust in an abstract amount—the dollar figure of the amount withheld rather than in the actual dollars withheld. *Begier*, 496 U.S. at 62, 110 S.Ct. 2258. Thus, the § 7501 trust applies to all funds withheld, including any funds that

may later be shown to be excess withholding.

[7] At the point the trust arises, the United States owns the equitable interest in the funds. *See Begier,* 496 U.S. at 59, 110 S.Ct. 2258. Accordingly, the funds withheld from Debtor's wages pursuant to Internal Revenue Code § 3402(a)(1) remained in trust for the United States until Debtor filed Debtor's 2008 tax return showing that Debtor had an overpayment of taxes and was entitled to a refund. *Accord In re Gould,* 401 B.R. 415, 424–25 (9th Cir.BAP2009), *aff'd,* 603 F.3d 1100 (9th Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 577, 178 L.Ed.2d 415 (2010)(holding that a tax overpayment is different from a tax refund and a debtor is not entitled to a refund of a tax overpayment until the IRS under 26 U.S.C. § 6402(a) decides to apply an overpayment to an unpaid tax liability, if permissible under applicable law).

■ Moreover, there is no "compulsory overwithholding" as Debtor alleges. As noted above, Debtor had the ability after the Lock-in Letter took effect to complete a new Form W–4 as well as a written statement to support the claims made on the new Form W–4 and submit those documents to the address in the Lock-in Letter in an effort to obtain an adjustment of Debtor's withholding allowances. Debtor did not avail himself of this process. Debtor's failure to avail himself of the adjustments set forth in the Lock-in Letter does not mean that the IRS violated the automatic stay.

## B. Post-petition Notices of Intent to Levy

The IRS concedes that the IRS' issuance of the nine Notices of Intent to Levy post-petition violated the automatic stay. The Court finds that the IRS' issuance of the nine Notices of Intent to levy post-

petition constitutes a willful violation of the automatic stay.

## C. Damages for the IRS' Violation of the Automatic Stay

■ A person injured by a violation of the automatic stay is entitled to actual damages reasonably incurred as a result of a stay violation. *In re Stinson,* 295 B.R. 109, 118 (9th Cir. BAP 2003), *rev'd on other grounds,* 128 Fed.Appx. 30 (9th Cir. 2005). Courts look at damages that are reasonably incurred. *In re Roman,* 283 B.R. 1, 11 (9th Cir. BAP 2002). There must be a causal relationship between the alleged stay violation and the injury. *See In re Dawson,* 390 F.3d 1139, 1150 (9th Cir.2004).

### 1. Debtor's Failure to Exhaust Administrative Remedies

■ The IRS argues that the current Internal Revenue Code § 7433, applicable to actions taken by the IRS after July 22, 1998 per Internal Revenue Code § 7433(i), requires the exhaustion of administrative remedies before a motion for damages can be brought in bankruptcy court. Internal Revenue Code § 7433(d) provides in relevant part:

(1) **Requirement that administrative remedies be exhausted.**—A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

26 U.S.C. § 7433(d). Internal Revenue Code § 7433(b) limits the maximum liability of the IRS and provides:

(b) **Damages.**—In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff

in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—

(1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and

(2) the costs of the action.

Internal Revenue Code § 7433(e) provides:

(1) **In general.**—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), or any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.

(2) **Remedy to be exclusive.—**

(A) **In general.**—Except as provided in subparagraph (B), notwithstanding section 105 of such title 11, such petition shall be the exclusive remedy for recovering damages resulting from such actions.

(B) **Certain other actions permitted.**—Subparagraph (A) shall not apply to an action under section 362(h) [k] of such title 11 for a violation of a stay provided by section 362 of such title; except that—

(i) *administrative and litigation costs* in connection with such an action may only be awarded under section 7430; and

(ii) administrative costs may be awarded only if incurred on or after the date that the bankruptcy petition is filed.

26 U.S.C. § 7433(e) (emphasis added). Internal Revenue Code section 7430 provides that a court cannot award a judgment for reasonable litigation costs "unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service." 26 U.S.C. § 7430(b)(1). Treasury Regulation § 301.7433–2, which relates to civil causes of action for violation of Bankruptcy Code sections 362 or 524, provides:

(a) **In general.** (1) If, in connection with the collection of a federal tax with respect to a taxpayer, an officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to the automatic stay) or section 524 (relating to discharge) of title 11, United States Code, or any regulation promulgated under such provision, the taxpayer may file a petition for damages against the United States in Federal bankruptcy court. The taxpayer has a duty to mitigate damages. The total amount of damages recoverable under this section is the lesser of $1,000,000, or the sum of—

(i) Actual, direct economic damages sustained as a proximate result of the willful actions of the officer or employee; and

(ii) Costs of the action.

(2) **An action under this section constitutes the exclusive remedy under the Internal Revenue Code for violations of sections 362 and 524 of the Bankruptcy Code.** In addition, taxpayers injured by violations of section 362 of the Bankruptcy Code may maintain actions under section 362(h) of the Bankruptcy Code (relating to an individual injured by a willful violation of the stay). However, any administrative or litigation costs in connection with an action under section

362(h) may be awarded, if at all, only under section 7430 of the Internal Revenue Code.

**(b) Actual, direct economic damages—**

(1) **Definition.** See § 301.7433–1(b)(1).

(2) **Litigation costs and administrative costs not recoverable as actual, direct economic damages.** Litigation costs and administrative costs are not recoverable as actual, direct economic damages. These costs may be recoverable under section 7430 (see paragraph (h) of this section), or, solely to the extent described in paragraph (c) of this section, as costs of the action.

**(c) Costs of the action.** Costs of the action recoverable as damages under this section are limited to the costs set forth in § 301.7433–1(c).

**(d) No civil action in federal bankruptcy court prior to filing an administrative claim—(1) In general.** Except as provided in paragraph (d)(2) of this section, no action under paragraph (a)(1) of this section shall be maintained in any bankruptcy court before the earlier of the following dates—

(i) The date the decision is rendered on a claim filed in accordance with paragraph (e) of this section; or

(ii) The date that is six months after the date an administrative claim is filed in accordance with paragraph (e) of this section.

(2) **When administrative claim filed in last six months of period of limitations.** If an administrative claim is filed in accordance with paragraph (e) of this section during the last six months of the period of limitations described in paragraph (g) of this section, the taxpayer may petition the bankruptcy court any time after the administrative claim is filed and before the expiration of the period of limitations.

**(e) Procedures for an administrative claim—(1) Manner.** An administrative claim for the lesser of $1,000,000 or actual, direct economic damages as defined in paragraph (b) of this section shall be sent in writing to the Chief, Local Insolvency Unit, for the judicial district in which the taxpayer filed the underlying bankruptcy case giving rise to the alleged violation.

(2) **Form.** The administrative claim shall include—

(i) The name, taxpayer identification number, current address, and current home and work telephone numbers (with an identification of any convenient times to be contacted) of the taxpayer making the claim;

(ii) The location of the bankruptcy court in which the underlying bankruptcy case was filed and the case number of the case in which the violation occurred;

(iii) A description, in reasonable detail, of the violation (include copies of any available substantiating documentation or correspondence with the Internal Revenue Service);

(iv) A description of the injuries incurred by the taxpayer filing the claim (include copies of any available substantiating documentation or evidence);

(v) The dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable (include copies of any available documentation or evidence); and

(vi) The signature of the taxpayer or duly authorized representative.

(3) **Duly authorized representative defined.** For purposes of this paragraph (e), a duly authorized representative is any attorney, certified public accountant, enrolled actuary, or any other person permitted to represent the taxpayer before the Internal Revenue Service who is not disbarred or suspended from practice before the Internal Revenue Service and who has a written power of attorney executed by the taxpayer.

(f) **No action in bankruptcy court for any sum in excess of the dollar amount sought in the administrative claim.** No action for actual, direct economic damages under paragraph (a) of this section may be instituted in federal bankruptcy court for any sum in excess of the amount (already incurred and estimated) of the administrative claim filed under paragraph (e) of this section, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time the administrative claim was filed, or upon allegation and proof of intervening facts relating to the amount of the claim.

(g) **Period of limitations—(1) Time for filing.** A petition for damages under paragraph (a) of this section must be filed in bankruptcy court within two years after the date the cause of action accrues.

(2) **Right of action accrues.** A cause of action under paragraph (a) of this section accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action.

(h) **Recovery of litigation costs and administrative costs under section 7430—(1) In general.** Litigation costs, as defined in § 301.7433–1(b)(2)(i), including attorneys fees, not recoverable under this section may be recoverable

under section 7430 if a taxpayer challenges in whole or in part an Internal Revenue Service denial of an administrative claim for damages by filing a petition in the bankruptcy court. If, following the Internal Revenue Service's denial of an administrative claim for damages, a taxpayer files a petition in the bankruptcy court challenging that denial in whole or in part, substantially prevails with respect to the amount of damages in controversy, and meets the requirements of section 7430(c)(4)(A)(ii) (relating to net worth and size requirements), the taxpayer will be considered a prevailing party for purposes of section 7430, unless the Internal Revenue Service establishes that the position of the Internal Revenue Service in the proceeding was substantially justified. Such taxpayer will generally be entitled to attorneys' fees and other reasonable litigation costs not recoverable under this section. For purposes of this paragraph (h), if the Internal Revenue Service does not respond on the merits to an administrative claim for damages within six months after the claim is filed, the Internal Revenue Service's failure to respond will be considered a denial of the claim on the grounds that the Internal Revenue Service did not willfully violate Bankruptcy Code section 362 or 524.

(2) **Administrative costs—(i) In general.** Administrative costs, as defined in § 301.7433–1(b)(2)(ii), including attorneys' fees, not recoverable under this section may be recoverable under section 7430. See § 301.7430–8.

(ii) **Limitation regarding recoverable administrative costs.** Administrative costs may be awarded only if incurred on or after the date of filing of the bankruptcy petition that formed the basis for the stay on collection

under Bankruptcy Code section 362 or the discharge injunction under Bankruptcy Code section 524, as the case might be.

**(i) Effective date.** This section is applicable to actions taken by the Internal Revenue Service officials after July 22, 1998.

Treas. Reg. § 301.7433–2.

According to the IRS, these provisions serve to divest this court of jurisdiction to hear a motion for damages for violation of the automatic stay before the debtor exhausts the debtor's administrative remedies. The IRS cites to several cases in support of this proposition. In *In re Graycarr, Inc.*, 330 B.R. 741 (Bankr. W.D.Ark.2005), the IRS willfully violated the automatic stay by sending notices of levy. The chapter 7 trustee moved for damages for violation of the automatic stay. The bankruptcy court held:

Three interrelated subsections form the core of § 7433 as it relates to this proceeding. Subsection (e) specifically relates to a willful violation of the automatic stay and allows the taxpayer to petition the bankruptcy court to recover damages related to that violation. Subparagraph (2)(A) of subsection (e) states that the petition shall be the exclusive remedy for recovering damages. "Exclusive" is not defined in the statute; however, at least one bankruptcy court has determined that because subsection (e) is devoted exclusively to bankruptcy violations and there is no mention of the need to exhaust administrative remedies in that subsection, a petition filed with the bankruptcy court fulfills the requirements of § 7433(e). *See In re Graham*, No. 99–26549–DHA, 2003 WL 21224773, at *2 (Bankr.E.D.Va. April 11, 2003). However, this ignores the precise wording of subsection (b), the damages clause for both subsections (a) and (e), both of

which are limited by subsection (d)(1). "Exclusive," in this instance, can only mean that once the administrative remedies have been exhausted—as required by § 7433(b), (d), and (e)—the taxpayer may file a petition with the bankruptcy court to determine the damages resulting from an alleged willful violation of the automatic stay. This is consistent with the jurisdiction granted to the bankruptcy courts to hear and determine all cases under title 11 and core proceedings arising under title 11 or arising in a case under title 11. 28 U.S.C. § 157(b).

Subsection (b) is the statutory provision that defines and limits damages available under subsection (e) to the lesser of $1,000,000 or actual, direct economic damages and the costs of the action. Subsection (e) was included in the damages section as a result of a 1998 amendment to the code. Internal Revenue Serv. Restructuring & Reform Act of 1998, Pub. L. No. 105–206, 112 Stat. 685. Subsection (d) states that a judgment for damages shall not be awarded under subsection (b)—which includes a petition filed under subsection (e)—unless the taxpayer first exhausts her administrative remedies within the Internal Revenue Service. Although the petition referred to under subsection (e) is the exclusive remedy available under § 7433 for violations of the automatic stay, before that remedy is available the taxpayer must exhaust her administrative remedies, which are set forth in the Treasury Regulations.

In this case, the trustee did not exhaust her administrative remedies. Accordingly, the Court finds that it does not have subject matter jurisdiction over the trustee's claim for damages at this time, and denies without prejudice the trustee's motion for sanctions and puni-

tive damages relating to the IRS's willful violation of the automatic stay.

*Graycarr*, 330 B.R. at 747. *See also In re Cooper*, 2011 WL 165830, *2 (Bankr. M.D.N.C. Jan. 19, 2011) (explicitly disagreeing with *In re Graham*, 2003 WL 21224773 (Bankr.E.D.Va. April 11, 2003)). The bankruptcy court in *Graham* held:

> The IRS argues that in order for debtors to prevail under § 7433, the debtors must have exhausted all administrative remedies. While this is a general requirement of the code section, there is a provision specifically for bankruptcy violations within § 7433 that does not require that the debtors exhaust administrative remedies. 26 U.S.C. § 7433(e)(2)(A) states that the exclusive remedy for recovering damages for violations of the Bankruptcy Code is to petition the bankruptcy court. There is no mention in 26 U.S.C. § 7433(e), the section devoted exclusively to bankruptcy violations, of the need to exhaust administrative remedies. The language is in fact quite clear [that] a petition to the bankruptcy court is the exclusive remedy for the violation of Bankruptcy Code provisions. The debtors have petitioned this Court, have fulfilled the requirements of 26 U.S.C. § 7433, and as such are entitled to the damages available to them under § 7433(b).

*Graham*, 2003 WL 21224773 at *2. Debtor argues that Internal Revenue Code § 7433(e) provides that a petition before a bankruptcy court is the exclusive remedy for damages for violation of the automatic stay, an argument along the lines of *Graham*. This argument is essentially that because Internal Revenue Code § 7433(e) itself does not contain any administrative exhaustion requirement, no such requirement exists.

The Court agrees with Debtor to the extent that Internal Revenue Code § 7433(e) permits the bankruptcy court to award actual damages for a violation of the automatic stay without requiring a debtor to exhaust the debtor's administrative remedies prior to seeking such actual damages. 26 U.S.C. § 7433(e)(2)(A). The Court does not reach the question of whether a debtor has to exhaust the debtor's administrative remedies in order to seek administrative and litigation cost damages under Internal Revenue Code § 7433(e)(2)(B) because no such application is before the Court.

### 2. Actual Damages

As noted above, the Court holds that Internal Revenue Code § 7433(e) permits the bankruptcy court to award actual damages for a violation of the automatic stay without requiring a debtor to exhaust the debtor's administrative remedies prior to seeking such actual damages. 26 U.S.C. § 7433(e)(2)(A). Treasury Regulation § 301.7433–2(b)(1) incorporates Treasury Regulation § 301.7433–1(b)(1), which provides in relevant part, "[a]ctual, direct economic damages are actual pecuniary damages sustained by the taxpayer as the proximate result of the reckless or intentional, or negligent, actions of an officer or an employee of the Internal Revenue Service." Treas. Reg. § 301.7433–1(b)(1). In this Motion, Debtor seeks actual damages of $2,318.36 in earnings and $20 for medication for stomach distress.

On or about July 16, 2008, Debtor received in the mail nine separate Notices of Intent to Levy issued by the IRS relating to Debtor's delinquent taxes for the tax years 1999 through 2007. According to Debtor, the nine Notices of Intent to Levy caused Debtor increased stress such that Debtor took six vacation days from work and did not take Debtor's children on vacation as planned, representing $2,318.36 in earnings. Debtor also spent an additional $20 on medication for stomach distress.

On July 21, 2008, Ms. Moran received a telephone call from Mr. Hong confirming that the IRS would not pursue any levies or liens against Debtor.

Debtor seeks $2,318.36 in earnings because Debtor asserts that as a result of taking the six vacation days in July 2008 and not receiving any "vacation," Debtor used up Debtor's vacation days and would not have been able to take additional vacation unless such future vacation was taken as unpaid leave. The IRS disputes that Debtor suffered actual damages relating to the vacation pay on three grounds. First, the IRS asserts that Debtor took the vacation days as a result of Debtor's previous plans rather than as a direct result of receiving the Notices of Levy from the IRS. Second, based on Debtor's pay stubs for the periods ending May 17, 2008 and September 6, 2008, Debtor had vacation balances of 108.68 and 66.64 hours, respectively, so Debtor still could have taken vacation time with pay after July 2008. Finally, there is no evidence corroborating Debtor's testimony regarding the cancellation of Debtor's actual vacation plans as a result of the IRS' actions.

■ The Court can certainly understand that it may well have been extremely upsetting to Debtor to receive the Notices of Levy from the IRS in violation of the automatic stay before Debtor's planned vacation. The Court also accepts Debtor's testimony that these Notice of Levy ruined Debtor's plans to take a vacation with Debtor's children. However, Debtor has not proven damages by sufficient evidence of this alleged suffering.

There is no corroborating evidence of specific cancelled plans. There is no proof of any actual loss of pay. For example, Debtor did not return to work instead of taking the six planned vacation days. Rather, Debtor apparently took the same planned leave at home, rather than going on vacation with Debtor's children. The pay stubs for May 2008 and September 2008 do not support Debtor's request for actual damages for lost wages. Debtor's request for lost wages is based in large part on the fact that Debtor had no other vacation time that Debtor could take with pay. However, a comparison of Debtor's pay stubs for the periods ending May 17, 2008 and September 6, 2008 shows that Debtor used 42.04 hours of vacation time during that period, and still had 66.64 hours of vacation time which Debtor could use as of September 6, 2008. Thus, while Debtor took vacation time in July 2008 and allegedly did not choose to go on vacation as planned, it is not the case that Debtor was left without any vacation time. Under the circumstances, Debtor's request for actual damages in the amount of $2,318.36 for using vacation days is not supported and is denied.

■ Regarding the medication, Debtor stated that Debtor had to increase Debtor's medication for Debtor's upset stomach and spent $20 on such medication. The IRS asserts that because Debtor's pay stubs for the periods ending May 17, 2008 and September 6, 2008 show a reduction of sick leave by 6 hours, so Debtor may have been ill regularly and any illness suffered by Debtor may not have been related to the IRS' actions. However, the Court finds that the IRS's evidence of Debtor's regular illness does not contradict Debtor's testimony that Debtor spent $20 on medication for stomach distress based on the IRS' nine Notices of Levy. Accordingly, this Court awards Debtor $20 in actual damages.

### 3. Attorneys Fees

■ Debtor also seeks attorneys fees for the prosecution of Debtor's motion for violation of the automatic say in an amount not yet specified. Under *Sternberg v.*

*Johnston,* 595 F.3d 937, 940 (9th Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 102, 178 L.Ed.2d 29 (2010), Debtor's attorneys fees for prosecuting this motion for violation of the automatic stay are not compensable as actual damages under Bankruptcy Code § 362(k), except to the extent Debtor incurred attorneys fees to have the nine Notices of Levy lifted. There is no evidence in the record as to what this amount would be because the parties agreed to wait in order to have Debtor's counsel submit evidence of Debtor's attorneys fees until the Court determined whether to allow attorneys fees as actual damages. Debtor may decide that it is not worth pursuing attorneys fees to redress only the Notices of Levy—which were in effect from July 16, 2008 until July 21, 2008.

## IV.

### CONCLUSION

For the reasons set forth in this Memorandum Decision, the Motion is denied with respect to the Lock-in Letter and granted with respect to the nine Notices of Intent to Levy sent by the IRS post-petition. The Court finds that this Court has the authority to grant actual damages for the IRS' violation of the automatic stay with respect to the nine Notices of Intent to Levy. The Court awards Debtor $20 in actual damages for on medication for stomach distress. Counsel for Debtor shall submit a proposed form of order after review by counsel for the IRS as to form.

## ATTACHMENT

P.O. Box 9047, Stop 834 ANSC
Andover MA 01810–0947

In reply refer to: 0866247751
Apr. 17, 2008 LTR 2801C E3
613–21–1394 000000 00 000

00042937
BODC: WI

BYRON K JHA

600 RAINBOW DR APT 229

MOUNTAIN VIEW CA 94041–2546546

Social Security Number: XXX–XX–XXXX

Employer: Taymor Industries USA Inc.

Employer Identification Number: 94–3097152

Dear Byron K Jha:

WHY ARE WE WRITING TO YOU?

Generally, the amount your employer withholds for federal income tax must be based on your Form W–4, Employee's Withholding Allowance Certificate. However, whether you are entitled to claim a complete exemption from withholding or a certain number of withholding allowances is subject to review by the IRS.

We have determined that you are not entitled to claim a complete exemption from withholding or more than a specified number of withholding allowances.

WHAT INSTRUCTIONS DID WE GIVE YOUR EMPLOYER(S)?

We instructed your employer above and any additional employers named on the last page of this letter to disregard the marital status and/or withholding allowances (or claim to complete exemption from withholding) shown on your Form W–4 and withhold income tax from your wages based on the following status and allowances:

Marital Status: Single

Withholding Allowances: 00

In addition, we have instructed your employer(s) not to honor your current

Form W-4 or a new Form W-4 from you, unless the status and/or allowances you claim result in MORE income tax withholding than at the status and allowances shown above.

## WHAT DOES THIS CHANGE MEAN?

This change in your marital status and/or withholding allowances will mean an increase in the amount of tax withheld from your wages.

## WHAT CAN YOU DO IF YDU DISAGREE?

- If you disagree with our determination please call us at the number shown below to explain why you are entitled to a marital status and/or number of withholding allowances (or complete exemption from withholding) different from that shown above. Please have the following information available to discuss. (If you file jointly you must have the same information available for your spouse)

  1. Form W4 and worksheet.
  2. Most current pay stub. (If you have more than one job, the most current pay stubs for all of your jobs.)
  3. Number of allowances you (and your spouse) are currently claiming on your Form(s) W-4.
  4. The number of allowances you (and your spouse) are entitled to claim.
  5. The Social Security Number and/or dates of birth for any children claimed on your return and a copy of your most recent Schedule A deductions (if any).

- If you prefer you may write to us at the address shown below. Please send a written statement to support your claim explaining why you are entitled to a marital status and/or number of withholding allowances (or complete exemption from withholding) different from that shown above.

- In either case if we do not hear from you within 30 days from the date of this letter, your employer(s) has been instructed to withhold at the status and allowances shown above. If you later believe that you are entitled to claim a different marital status and/or more withholding allowances (or complete exemption from withholding) than we determined, you can complete a new Form W-4 and a written statement to support the claims made on the Form W-4. You must submit the Form W-4 and the written statement to us at the address shown below.

## CAN YOUR EMPLOYER(S) CHANGE YOUR MARITAL STATUS AND/OR INCREASE YOUR WITHHOLDING ALLOWANCES?

Your employer(s) must disregard any new Form W-4 that you file which results in less income tax withholding until written notification is received from us. If the information you give us justifies a change to the status and/or allowances shown above, we will instruct your employer(s) to adjust your income tax withholding accordingly. However, if you give your employer(s) a new Form W-4 that will result in MORE income tax withholding than at the status and allowances shown above, your employer(s) must honor it.

## CAN YOU BE ASSESSED A PENALTY?

If there is no reasonable basis to justify the marital status and/or withholding allowances you claimed (or claim to complete exemption from withholding)on your Form W–4, you may be subject to a $500 civil penalty under IRC 6682 for making a false statement about your withholding.

**WHAT IF YOU HAVE MORE QUESTIONS?**

If you have any questions, you may call the Withholding Compliance Unit, weekdays between the hours of 8:00 a.m. and 8:00 p.m. at 1–866–791–0289.

If you prefer, you may write to us at the address shown below:

Internal Revenue Service

Compliance Services

Withholding Compliance Program

P.O. Box 9047, Stop 837

Andover, MA 01810–0947

You may also send us the information by fax instead of mail. Our fax number is 978–474–1326. Please include a cover sheet giving the following information:

Date:

Name:

Phone number:

Social Security Number:

Number of faxed pages:

Whenever you write, please include this letter and, in the spaces below, give us your telephone number with the hours we can reach you. Keep a copy of this letter for your records.

Telephone                                    Number

(   )_____

Hours_____

Sincerely yours,

Maureen A. Judge

Operations Manager, Collection